555 A.2d 835

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Louis BILLA, Appellant.**

Supreme Court of Pennsylvania.

Argued Dec. 5, 1988.

Decided March 6, 1989.

Reargument Denied April 18, 1989.

Donald Michael Padova, Philadelphia, for appellant.

Gaele McLaughlin Barthold, Deputy District Atty., Ronald Eisenberg, Chief, Appeals Div., Catherine Marshall, Philadelphia, Robert A. Graci, Chief, Deputy Atty. Gen., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

On June 11, 1987, a jury of the Court of Common Pleas of Philadelphia County convicted Louis Billa, the appellant, of murder of the first degree, escape and possession of an instrument of crime. The following day, that same jury sentenced appellant to death. Post-verdict motions were denied by the presiding judge who formally sentenced appellant to death on November 18, 1987. This direct appeal followed. We now reverse appellant's convictions, and remand to the Court of Common Pleas for a new trial.

The evidence presented at trial, viewed in the light most favorable to the Commonwealth as verdict winner, discloses the following.

On January 8, 1987, the body of sixteen year old Maria Rodriquez was found in the basement of her house in Philadelphia. In addition to defensive wounds on her hands

and arms, the victim had been stabbed eight times including once in the chest which penetrated her lung, and once in the neck. The knife had broken off and was protruding from her neck. Additionally, the victim had sustained a blunt force injury to her head which was of sufficient force to fracture and expose her skull. A bloody aluminum baseball bat was found in the victim's kitchen.

The victim's shirt was raised up, exposing her breasts, and her pants pockets were pulled inside out. Medical examination discovered the presence of semen in the victim's vagina from a "Type A secretor," but no other indication of sexual assault. It was established that, on the morning of her murder, the victim had been wearing several items of jewelry, namely: a necklace with a heart-shaped pendant with the inscription "Sweet 16," which she had received for her birthday the day before; a necklace imprinted with the name "Maria"; two other gold chains and a ring with the word "love" on it. The jewelry was missing when the victim's body was discovered.

The investigating detective learned from the victim's friends and neighbors that appellant had been trying to establish a relationship with the victim. Appellant, twenty-one years old at the time, had spoken with the victim from the window of his room at the nearby Kensington Pre-release Center, a converted YMCA building, where he was serving part of a jail sentence for a previous conviction. The victim had recently given appellant a Christmas card with a photograph of herself. Appellant had given the victim the "love" ring.

Appellant had left the Kensington Center without authorization on the day of the murder (January 8, 1987). He returned to the Center later that day, and a detective interviewed him at the Center that evening. On January 10, 1987, appellant again left the Kensington Center without authorization, taking with him his clothes and personal belongings. Earlier that day, appellant had given two gold chains with pendants to his cellmate, Andre Rodriquez (no relation to the victim), one with the name "Maria" on the

pendant and the other with the inscription "Sweet 16." Mr. Rodriquez turned these items over to the police, and informed them that appellant also had a couple of other gold chains in his possession. Appellant's mother (Mrs. Lottie Billa) returned appellant to the Kensington Center on January 11, 1987 at about 1:00 a.m. A search warrant executed at Mrs. Billa's home on January 17, 1987 produced a pillowcase containing appellant's clothing which, upon analysis, revealed type "O" blood stains which matched the victim's blood type.

On January 17, 1987, appellant was transported from the Kensington Center to Homicide Division where he was given *Miranda* warnings which he waived, whereupon he rendered an inculpatory statement to the interrogating detectives. Appellant stated the following: He left the center at about 10:00—10:30 a.m. on January 8, 1987, and went to the victim's house. In the kitchen, they discussed their "relationship," and the victim told appellant she could not have a relationship with him because she had another boyfriend. They argued and, according to appellant, the victim grabbed a knife on the kitchen table and ordered him out of her house. Appellant's statement reads as follows:

So, I grabbed the knife. The cellar door was open. We struggled down the cellar steps. By me grabbing hold of her hand, that is how she got stabbed, by us tussling that is how it was going. I don't know how many times that was. Then we tumbled on the floor. That is when I got a hold of the knife. She grabbed a hold of my hand when I stabbed her in the neck. I left the knife in her neck. The only time that I wanted to stab her was when I' stabbed her in the neck. I ran up the steps and went out the front door. I went back to the "Y." I got into the YMCA by the same way I left. That was through the metal fire escape door which is in the back of the YMCA.

Appellant's statement also admits taking the jewelry from the victim and giving the two chains to his cellmate, and throwing the remaining jewelry away. (Appellant stated that he took the jewelry in the kitchen before the

stabbing started just because he wanted to wear the chains, and because he wanted the victim to return the ring.) He also stated that, after he stabbed the victim, he gave her "two cracks on her head" with an aluminum bat.

Appellant was charged with murder, robbery, escape, and possession of an instrument of crime.[1] Appellant was not charged with rape or any other sexual assault relating to the murder of this victim.

The Commonwealth also introduced evidence concerning a prior offense committed by appellant some two months prior to the murder of Maria Rodriquez. Florence Morales, twenty years old, testified that on November 7, 1986, a few blocks from the Kensington Center, appellant accosted her at about 2:00 p.m. and, when she attempted to evade him, he pushed her onto some steps, bit her face, threatened her with a gun that he said was in his pocket, took gold chains from around her neck, and made her go to a nearby vacant lot with him. At that point, appellant knocked Ms. Morales to the ground, attempted to have her perform oral sex on him, pulled down her pants, and raped her. During the rape, appellant commanded this victim to tell him that she loved him and when she complied, he struck her in the face saying "Bitch, you know you don't love me." The appellant and this victim were not acquainted.

After the rape, appellant told this victim that he could not let her go because she would go to the police, whereupon he strangled her until she lost consciousness in the vacant lot. Fortunately, this victim did not die. She was discovered and taken to a hospital where she received emergency treatment. Medical evidence established that semen in her vagina was from a "Type A secretor." Appellant was shown to be a "Type A secretor." Approximately a week before the instant trial began, appellant was tried and convicted of rape, attempted involuntary deviate sexual intercourse, robbery and aggravated assault for his attack on Ms. Morales. The Superior Court has affirmed these

1. Respectively, 18 Pa.C.S.A. §§ 2502, 3701, 5121 and 907.

convictions. *Commonwealth v. Louis Billa*, No. 3275, Philadelphia 1987.

The Commonwealth did not present evidence of the fact that appellant had been convicted of these charges stemming from the sexual assault on Ms. Morales, but did present the facts and circumstances of this criminal episode. The trial court admitted said evidence, over vigorous objection of defense counsel, on the Commonwealth's theories that the crimes were similar enough in modus operandi to permit an inference that the perpetrator of one was the perpetrator of the other, to show appellant's intent and motive in murdering Ms. Rodriquez (i.e., to prevent her from reporting him after he had compelled her to have sex with him), and to negate appellant's defense that the killing of his victim was accidental.[2]

Appellant testified in his own defense, and gave an account of the homicide essentially similar to that contained in his statement to the police, although at trial he stated he could not remember hitting the victim with a bat. He also denied at trial that he ever intended to stab Ms. Rodriquez. His theory of the homicide was that, in the struggle for the knife that Ms. Rodriquez had picked-up, the knife stabbed her accidently. He further claimed that when he went to the victim's house, he was there not to have sex with the victim (on cross-examination he denied having sex with her) but just to establish a closer relationship with her "as a friend."

The jury returned a verdict of guilty of murder of the first degree, escape, and possession of an instrument of crime. Appellant was acquitted, by virtue of a hung jury, on the charge of robbery.

Pursuant to section 9711 of the Sentencing Code, 42 Pa.C.S.A. § 9711, a sentencing proceeding was immediately conducted before the same jury. The Commonwealth attempted to prove the existence of two aggravating circum-

2. The Commonwealth had initially attempted to consolidate the two cases, but the court denied the Commonwealth's motion to consolidate.

stances, that the killing was perpetrated during the commission of a felony (the rape of the victim), and that appellant had a significant history of felony convictions involving violence or the threat of violence (namely, the rape/assault etc. involving Ms. Morales, and two separate convictions for robbery/criminal conspiracy). 42 Pa.C.S.A. § 9711(d)(6) and (9), respectively. The appellant's mother testified that appellant had been a hyperactive child with a frustrating learning disability whose father had committed suicide in 1983. Appellant's godfather and a former girlfriend also appeared on his behalf. Additionally, appellant testified at this sentencing proceeding to plead for his life.

Following closing arguments and the court's charge to the jury, the jury returned a sentence of death, finding one aggravating circumstance (significant history of violent felony convictions) and no mitigating circumstances. 42 Pa.C. S.A. § 9711(c)(1)(iv). Post-verdict motions were denied and appellant was formally sentenced to death on November 18, 1987. For the reasons to follow, we reverse appellant's convictions.

Initially, we have no hesitancy in holding that the evidence was sufficient to sustain appellant's conviction for murder of the first degree.[3]

Appellant's principle contention below and on appeal is that he was unduly prejudiced at his trial and sentencing hearing by the introduction of the evidence of appellant's prior sexual assault upon Florence Morales, especially by her vivid recounting of those events at his trial for the murder of Ms. Rodriquez. Appellant asserts that this evidence was inadmissible under any of the recognized exceptions to the general rule prohibiting introduction of evidence of a defendant's prior crimes or offenses.

---

**3.** It is our practice to review the evidence for sufficiency on the conviction for murder of the first degree in all capital cases, even if the appellant fails to specifically argue that the evidence is insufficient. *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 26 n. 3, 454 A.2d 937, 942 n. 3 (1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), *reh'g denied,* 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983).

Evidence of a defendant's distinct crimes are not *generally* admissible against a defendant *solely* to show his bad character or his propensity for committing criminal acts, as proof of the commission of one offense is not *generally* proof of the commission of another. *Commonwealth v. Lark*, 518 Pa. 290, 543 A.2d 491, 497 (1988). However, this general proscription against admission of a defendant's distinct criminal acts is subject to numerous exceptions where special circumstances exist which render such evidence relevant for some legitimate evidentiary reason and not merely to prejudice the defendant by showing him to be a person of bad character. Some of the exceptions that this Court has recognized in the past as legitimate bases for admitting evidence of a defendant's distinct crimes include (but are not limited to): (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one naturally tends to prove the others; (5) to establish the identity of the person charged with the commission of the crime on trial where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other; (6) to impeach the credibility of a defendant who testifies in his trial; (7) situations where defendant's prior criminal history had been used by him to threaten or intimidate the victim; (8) situations where the distinct crimes were part of a chain or sequence of events which formed the history of the case and were part of its natural development (sometimes called "res gestae" exception). *See Commonwealth v. Lark, supra* 518 Pa. at 302, 543 A.2d at 497 and cases cited therein, *and Commonwealth v. Randall*, 515 Pa. 410, 528 A.2d 1326 (1987).

Of course, the admissibility of evidence is a matter addressed to the sound discretion of the trial court and an appellate court may only reverse rulings on admissibility upon a showing that the lower court abused its discretion. *Commonwealth v. Claypool*, 508 Pa. 198, 202, 495 A.2d

176, 178 (1985). As with any evidentiary ruling, the trial court should balance the relevancy and evidentiary need for the evidence of distinct crimes against the potential for undue prejudice. *Commonwealth v. Lark, supra* 518 Pa. at 310, 543 A.2d at 501; *Commonwealth v. Donahue*, 519 Pa. 532, 549 A.2d 121, 125, 127 (1988).

As noted, the Commonwealth introduced the challenged evidence of appellant's prior sexual assault on several asserted grounds, namely that such evidence was relevant and necessary to show motive/intent (that appellant killed the victim in this case to prevent her from testifying after he robbed and sexually assaulted her, as he tried to do in the prior case), to refute appellant's assertion that the victim's death was an accident inadvertently caused during the struggle for the knife, and that the two crimes possessed such similar characteristics and *modus operandi* that proof of the identity of the perpetrator of the first (the rape) tends to prove the identity of the perpetrator of the second (the homicide). Because we agree with the Commonwealth that, under the circumstances, the evidence of the prior sexual assault was relevant and of important evidentiary value to establish motive/intent and to negate appellant's claim of accident, we do not address the remaining justification offered for said evidence.[4] *Commonwealth v. Donahue, supra*, 519 Pa. at 542–543, 549 A.2d at 126.

Our recent decision in *Commonwealth v. Donahue*, 519 Pa. 532, 549 A.2d 121 (1988) is instructive. In *Donahue*, a plurality of the members of this Court upheld the admission into evidence, in a prosecution of the defendant there for murder stemming from an incident of child abuse, of a prior incidence of child abuse involving the same defendant. The Opinion Announcing the Judgment of the Court, per Justice Flaherty, held that "[b]ecause the former case tends to

4. In its opinion denying appellant's post-trial motions, the trial court held that the similarities between the two crimes were "overwhelming" and employed sufficiently similar *modus operandi* as to permit the admission of the evidence of rape. We express no opinion on the propriety of this ruling, which we affirm on other grounds.

decrease the likelihood that the same man would be involved in two such similar accidents, the former incident is admissible as probative of whether the injuries in the second case were accidental, as Donahue claims they were." *Id.*, 519 Pa. at 544, 549 A.2d at 127. *See also Commonwealth v. Travaglia*, 502 Pa. 474, 467 A.2d 288 (1983), *cert. denied* 467 U.S. 1256, 104 S.Ct. 3547, 82 L.Ed.2d 850, *reh'g denied* 468 U.S. 1226, 105 S.Ct. 27, 82 L.Ed.2d 920 (1984) (evidence of prior criminal acts committed during defendant's "crime spree," including murder, admissible to establish motive and intent and to refute his claim of accidental killing); *Commonwealth v. Crawley*, 514 Pa. 539, 526 A.2d 334 (1987) (defendant's prior threats against a third party were relevant and admissible to shed light on his motive for committing what might otherwise appear to be inexplicable brutal conduct of the defendant).

We agree with the Commonwealth that the evidence of the sexual assault on his prior victim was, under the circumstances, relevant and of significant evidentiary value to proving appellant's motive, intent and the absence of accident in the murder and other crimes against his second victim. Moreover, although the evidence of the prior sexual assault was undoubtedly of a highly prejudicial and potentially emotional nature, involving as it did the graphic testimony by the prior rape victim, the trial court did not abuse its discretion in deciding that the evidentiary value of said evidence outweighed its potential for prejudice.

█ Our inquiry does not end there. The court erred in failing to accompany the evidence of the prior sexual assault with any cautionary or limiting instruction explaining the limited purposes for which the evidence was relevant and admissible.

As we stated in *Claypool, supra:*

Although we have determined that evidence of prior criminal acts which the defendant himself makes relevant to prove the crimes with which he is charged is admissible, we are *still mindful of the potential for misunderstanding on the part of the jury when this type of*

*evidence is admitted. Therefore, such evidence must be accompanied by a cautionary instruction which fully and carefully explains to the jury the limited purpose for which that evidence has been admitted.*

In this case, since the admission of the evidence of appellee's statement concerning his prior conviction was accompanied by a detailed cautionary instruction explaining the limited context in which this evidence could be considered, we conclude that the trial court did not commit error in admitting this evidence.

508 Pa. at 1205–06, 495 A.2d at 179 (emphasis added). *See also: Commonwealth v. Covil,* 474 Pa. 375, 383, 378 A.2d 841 (1977) ("When evidence is admissible for a limited purpose, a defendant is entitled to a limiting instruction."); *Commonwealth v. Amos,* 445 Pa. 297, 301–02, 284 A.2d 748 (1971) ("Of course, the potentially prejudicial effect of the introduction of the defendant's record requires that the jury be made aware of the limited purpose of such evidence. . . . "[W]e deem it extremely important that the jury clearly understands in every case, the limited purpose of such evidence." "); McCormick, *Evidence,* § 59 (2d ed.).

It is clear that the challenged evidence in this case, the vivid description by a prior rape victim of appellant's violent sexual assault against her, was highly inflammatory and created the substantial danger that the jury could be swayed in its deliberations on the degree of guilt by this evidence showing appellant's criminal character and his propensity to sexually assault young Hispanic females. Such evidence was relevant and admissible as the trial court ruled, but the court erred in failing to give an immediate and complete cautionary or limiting instruction to the jury explicitly instructing the jury as to the limited purposes for which the evidence was deemed admissible. Such an instruction neither preceded nor followed the introduction of said evidence, nor was a limiting instruction given in its final charge to the jury. Without such instruction, the jury was left without guidance as to the use it could legitimately make of the inflammatory evidence and may have been

more inclined, therefore, to convict the appellant of first degree murder because he had assaulted and intended to kill his prior victim.[5]

■ However, while trial counsel vigorously objected to the admission of the challenged evidence, at no time did he request the court to give the appropriate limiting instructions to the jury. Not surprisingly, appellate counsel, who was trial counsel below, did not raise the issue of the failure of the court to give limiting instructions, nor does he assert his own ineffectiveness in failing to request such instructions. Technically, therefore, this issue has been waived.

This Court has not been technical in applying our waiver rules in death penalty cases. In *Commonwealth v. Zettlemoyer, supra,* we addressed an issue that had not been preserved for review, and stated that, due to the final, irrevocable nature of the death penalty and to this Court's statutory obligation to independently review the record for sufficiency and to review the sentence of death, "we will not adhere strictly to our normal rules of waiver.... Accordingly, significant issues perceived *sua sponte* by this Court, or raised by the parties, will be addressed and, if possible from the record, resolved." 500 Pa. at 50, n. 19, 454 A.2d at 955, n. 19. While appellant's trial/appellate counsel did not raise this issue of the court's failure to render the appropriate instruction, his "jailhouse lawyer" did in his Pro Se Supplemental Brief.[6] In this supplemental

5. It is curious that the Commonwealth did not charge appellant with sexual assault in this case, yet it offered the evidence of the prior sexual assault on Ms. Morales to suggest that his motive and intent in killing Ms. Rodriquez was to silence her for his sexual assault or advances, and as an aggravating circumstance on the theory that the killing was perpetrated during the commission of her rape. (Initially, the Commonwealth had planned to prove the aggravating circumstance that the killing was committed during the perpetration of a robbery. However, when the jury hung on the charge of robbery, the Commonwealth changed its direction at the sentencing hearing.) The jury did not find such aggravating circumstance, which indicates that it did not believe he had raped this victim.

6. On December 16, 1988, appellant filed with this Court an "Application Made Pursuant to Pa.R.A.P. 2501(a) To File Pro Se Supplemental

brief, appellant asserts, inter alia, that counsel was constitutionally ineffective in failing to request a limiting instruction on the jury's consideration of the evidence of the prior sexual assault. Under the circumstances, we agree.

Our standards for reviewing the effectiveness of counsel's representation of a criminal defendant is well established. In *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987), this Court reiterated and clarified those standards, holding:

> Our cases clearly indicate that ineffectiveness claims are measured by two components. First, counsel's performance is evaluated in light of its reasonableness if it is determined that the underlying claim is of arguable merit. . . .
>
> Second, we have required that the defendant demonstrate how the ineffectiveness prejudiced him.

515 Pa. at 158–59, 527 A.2d at 975 (citation omitted). *See also Commonwealth v. Griffin*, 511 Pa. 553, 515 A.2d 865, 871–72 (1986).

It is apparent on this record that appellant's underlying claim had arguable merit. Our cases establish that appellant was *entitled* to a limiting instruction on the use that the jury could make of the challenged evidence which was admissible only for a limited purpose. The court's failure to give such an instruction, upon request, would have been reversible error.

It is also apparent on this record that appellant was prejudiced by counsel's failure to make such a request. The evidence was admissible, but it should not have been admitted without restriction and without the court's clear and complete instruction to the jury to consider it only for its limited evidentiary purpose and, with a caution not to be prejudiced or biased against the defendant in this case because of his criminal conduct in the other case. Given the highly inflammatory and extensive nature of the evidence of the prior sexual assault, we cannot say with any reason-

Brief." For the reasons set forth in text, we grant said application, and will consider appellant's Pro Se Supplemental Brief.

able certainty that the jury would have returned the same verdict of murder of the first degree had it been properly instructed.

Finally, we are able to determine on this record that there was no reasonable basis designed to effectuate his client's interests for counsel's failure to request a limiting instruction. The damaging evidence was not a mere fleeting or vague reference to the appellant's criminal record. In such cases, trial counsel might reasonably decline to request a limiting instruction from the court where it was felt the prejudice was minimal and that an instruction might serve to emphasize what might have gone relatively unnoticed by the jury.

To the contrary, the evidence was extensive and inflammatory, was emphasized by the Commonwealth in its closing argument, and was a substantial component of the Commonwealth's case. An appropriate limiting instruction, therefore, would not have increased the jury's awareness of the prior sexual assault, but it well might have placed its limited legal significance in proper perspective. As Professor McCormick has stated, "[s]uch an instruction may not always be effective, but admission of the evidence with the limiting instruction is normally the best available reconciliation of the respective interests." McCormick, *Evidence supra* at § 59. As the jury's attention had already been focused upon the evidence of the prior sexual assault, the best, and only reasonable strategy would have been to request the limiting instruction to attempt to minimize or ameliorate the damage by limiting the jury's use or consideration of said evidence. Counsel's failure to make such a request had no reasonable basis designed to effectuate his client's interest.

From the foregoing, we find counsel to have been constitutionally ineffective in failing to request an appropriate limiting instruction, and for failing to preserve this issue for appellate review. A new trial is necessary.

Because of our disposition of appellant's convictions, it is not necessary to address any of appellant's remaining con-

tentions. Nevertheless, we consider it appropriate and prudent to address several matters of concern arising from the sentencing hearing to prevent their repetition at the retrial in the instant case and to guide our trial courts in general.

■ The instructions given to the jury at the sentencing proceeding needlessly deviated from the language of section 9711 of our Sentencing Code, were needlessly confusing, and in at least one instance, were sufficiently prejudicial to have required vacation of the sentence of death and a remand for resentencing.[7] The major problem with the court's instructions at the sentencing phase of trial was in regards to the need for jury unanimity in finding mitigating circumstances. Our statute provides:

(c) Instructions to jury.—

(1) Before the jury retires to consider the sentencing verdict, the court shall instruct the jury on the following matters:

. . . . .

(iv) the verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance specified in subsection (d) and no mitigating circumstance or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances. The verdict must be a sentence of life imprisonment in all other cases.

This Court recently reviewed our statutory instruction on mitigating circumstances against a challenge that it failed to comply with the United States Supreme Court's decision in *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988). *Commonwealth v. Frey,* 520 Pa. 338, 554 A.2d 27 (1989). In *Mills,* the Supreme Court invalidated

7. The legislature has amended section 9711 to provide that if this Court determines that a sentence of death must be vacated for any reason other than failure of the record to support any of the aggravating circumstances or that the sentence is excessive or disproportionate to that imposed in similar cases, "it shall remand for a new sentencing hearing pursuant to subsections (A) through (G)." Act of November 16, 1988, effective immediately and applicable to all cases and appeals pending on effective date.

Maryland's death sentencing scheme on the grounds that it might have improperly precluded some of the individual jurors from weighing their beliefs as to the existence of mitigating circumstances by requiring them to agree unanimously on such mitigating circumstances in order to reach that weighing stage. The Maryland law was ambiguous on whether a jury had to be unanimous on the existence of mitigating circumstances before it or any of the individual jurors could weigh said circumstances against aggravating. Nevertheless, the United States Supreme Court held that unless it could rule out the substantial possibility that the jury may have rested its verdict on "improper grounds," the verdict could not stand.

The Court stated in *Mills:*

The possibility that petitioner's jury conducted its task improperly certainly is great enough to require resentencing.

We conclude that there is a substantial probability that reasonable jurors, upon receiving the judge's instructions in this case, and in attempting to complete the verdict form as instructed, well may have thought they were precluded from considering any mitigating evidence unless all 12 jurors agreed on the existence of a particular such circumstance. Under our cases, the sentencer must be permitted to consider all mitigating evidence. The possibility that a single juror could block such consideration, and consequently require the jury to impose the death penalty, is one we dare not risk.

486 U.S. at ——, 108 S.Ct. at 1870, 100 L.Ed.2d at 399–400.[8] Moreover, the Court stated that it does not matter whether the barrier to the sentencer's consideration of all mitigating circumstances is interposed by statute, by the sentencing

---

8. Under the Maryland scheme, the Court was struck by the hypothetical possibility that all of the jurors might agree that there were some mitigating circumstances, but that unless all twelve agreed on the same circumstance, the jury would never reach the balancing/weighing stage, but would instead be required to impose the death penalty. 486 U.S. at ——, 108 S.Ct. at 1864, 100 L.Ed.2d at 393.

court, or by an evidentiary ruling. 486 at ——, 108 S.Ct. at 1865, 100 L.Ed.2d at 394.

In *Commonwealth v. Frey, supra,* we held that the instructions and verdict slip in Frey's case closely followed the statutory language which "did not state or infer a requirement that any given mitigating circumstance must be unanimously recognized before it can be weighed against aggravating circumstances in reaching a verdict ... [and] individual jurors were free to weigh whatever mitigating circumstances they perceived regardless of whether other jurors agreed that those circumstances were established by the evidence." 520 Pa. at 347–348, 554 A.2d at 31.

Unfortunately, the instructions given to the jury in the instant case deviated radically from the language of the statute and created the very *Mills* problem that the statute carefully avoids. The Court initially failed to give any instruction on unanimity regarding aggravating and/or mitigating circumstances. When this omission was pointed out by counsel, the court gave the following instruction:

Remember, the same rules apply about unanimity. And, of course, you may have no unanimity, too. *But if you find* an aggravating circumstance or *a mitigating circumstance, you will find that it must be unanimous.*

Mrs. Wolf, you will retire this jury.

Notes of Testimony (N.T.), Sentencing Hearing, June 11, 1987 at 420.

Thus the last instruction given the jury was that it had to be unanimous if it found a mitigating circumstance. There is no question that this instruction is invalid under *Mills,* and would have required the vacation of appellant's sentence of death.

■ The court's instructions were inadequate, confusing and erroneous in at least two other respects which are worth mentioning. The court allowed the Commonwealth to attempt to demonstrate the aggravating circumstance that the killing was committed during the perpetration of a felony, rape, yet the court refused the prosecutor's sugges-

tion that it instruct the jury on the elements of rape. It was error to allow the jury to speculate on the elements of this crime. The court must define the elements of any felony which the Commonwealth seeks to use as the basis for conviction or sentence.

 The court also gave a confusing and strange instruction (not challenged by defense counsel) regarding aggravating and mitigating circumstances. The court stated:

> Remember, if you find one aggravating circumstance and no mitigating circumstance, your verdict will be death.
>
> If you find no aggravating circumstance and no mitigating circumstances, the sentence will be life imprisonment.
>
> If you find one aggravating and one mitigating, it will be life.
>
> If you find more aggravating circumstances than you find mitigating circumstances, then the penalty will be death.
>
> . . . . .
>
> You will add up your findings either aggravating or mitigating and you will render the following sentencing verdict either death or life imprisonment.

*Id.* at 418–19.

This is patently in derogation of the language of our statute. Not only did the court flatly omit the mandated instruction that the verdict must be death if the jury unanimously finds one or more aggravating circumstances which *outweigh* any of the mitigating circumstances, the jury was also erroneously told that all it had to do was "add up" the aggravating and if they were "more ... than" the mitigating, the penalty had to be death. Thus the court erroneously instructed the jury to merely count and quantify the aggravating and mitigating circumstances. *Commonwealth v. Holland,* 518 Pa. 405, 420–421, 543 A.2d 1068, 1075 (1988).

The court's charge to the jury at the sentencing hearing was hopelessly confusing, and completely disregarded the

language of section 9711. We cannot overemphasize that trial courts must follow the language of section 9711 (as interpreted by this Court), and where necessary define for the jury the significant terms of that section (e.g., "torture," "significant history," "grave risk of death"). Our death sentencing procedures were carefully designed by the legislature to channel the discretion of the jury and prevent arbitrary or capricious imposition of the death penalty. Our trial courts are directed to follow the language of the statute and interpretive decisions of this Court, and thereby avoid the problems created by ill-conceived deviations from that language.

For the foregoing reasons, we issue the following mandate:

Appellant's Application Made Pursuant to Pa.R.A.P. 2501(a) to File Pro Se Supplemental Brief is granted;

Appellant's Motion for Appointment of New Counsel on appeal and counsel's Petition for Leave to Withdraw as Counsel and Appointment of New Counsel on appeal are denied;

The judgments of sentence of the Court of Common Pleas of Philadelphia County are reversed, and the case is remanded for a new trial.

ZAPPALA, J., concurred in the result.