**[J-97A&B-2017][M.O. - Wecht, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | Nos. 722 & 723 CAP |
| | : | |
| | : | Appeal from the Order dated 1/6/16 and |
| Appellee/Cross-Appellant | : | entered on the docket on 1/12/16 in the |
| | : | Court of Common Pleas, Clearfield |
| | : | County, Criminal Division at No. CP-17- |
| | : | 0000062-1990 |
| v. | : | |
| | : | |
| | : | |
| DANIEL CRISPELL, | : | |
| | : | |
| Appellant/Cross-Appellee | : | SUBMITTED:  December 6, 2017 |

## *CONCURRING AND DISSENTING OPINION*

**CHIEF JUSTICE SAYLOR**                    **DECIDED:  September 21, 2018**

I join Parts I, II(A) and (D), and III of the majority opinion, concur in the result as to Part II(B), and respectfully dissent as to Part II(C).

With reference to Part II(B), I have difficulty with the majority's conclusion that trial counsel could have had no reasonable strategy for failing to adduce evidence that Christopher Weatherill had scratches on his arms and chest at the time of his arrest. *See* Majority Opinion, *slip op.* at 14-15.  Along these lines, the majority itself ultimately reasons that "the inference that Crispell would have asked the jury to draw from Weatherill's scratches was inconsistent with and undermined by other uncontradicted

evidence of record," *id.* at 22-23.[1]  Notably, moreover, trial counsel relied upon just such reasoning, at the PCRA hearing, in defending his stewardship.  *See, e.g.*, N.T., March 31, 2014, at 101-102 (reflecting counsel's explanation, relative to evidence of the scratches, that "I don't know what use this would have been," *inter alia*, in light of his understanding that the scrapings from fingernail clippings from the victim did not contain Weatherill's DNA).  I know of no authority requiring counsel to potentially undermine the credibility of the defense by pursuing every possibly favorable inference, no matter how weak or unsubstantiated.[2]

Part II(C) concerns trial counsel's stewardship in failing to seek to exclude (or at least secure a limiting instruction relative to) evidence of a subsequent attempted purse

---

[1] While I agree with this reasoning, I note the apparent tension between it and the majority's initial assessment that the evidence concerning Weatherill's scratches "might tip the balance in favor of the defendant" and supports a "reasonable inference that, as Crispell testified, Weatherill was the killer."  Majority Opinion, *slip op.* at 14-15.

[2] In this regard, I observe that Appellant related in his statement to police, which was presented to the jury, that he and Weatherill carried the body of the victim through the woods, that Weatherill tripped on a rock and fell to the ground, and that a window in the car the pair was driving was shattered in an accident.  In other words, there were multiple alternative explanations for the scratches.

In terms of the majority's prejudice assessment, to the degree that the majority relies on the testimony of jailhouse informant Donald Skinner, *see* Majority Opinion, *slip op.* at 22 (positing that "it comes down to Skinner's testimony alone"), I take this opportunity to note my agreement with those jurisdictions which have found such testimony to be "inherently suspect."  *State* v. *Diaz*, 25 A.3d 594, 606 (Conn. 2011) (discussing "the ease with which such testimony can be fabricated, the difficulty in subjecting witnesses who give such testimony to meaningful cross-examination and the great weight that juries tend to give to confession evidence"); *see also State v. Marshall*, 882 N.W.2d 68, 81–83 (Iowa 2016) (explaining that "[t]he problem of proof, along with questions of reliability, have given rise to requiring some corroboration of jailhouse informant testimony to support a conviction in at least eighteen states").  *See generally* Jessica A. Roth, *Informant Witnesses and the Risk of Wrongful Convictions*, 53 AM. CRIM. L. REV. 737, 765-84 (2016).

snatching from an elderly woman, resulting in her falling to the ground.  The majority concludes that trial counsel's dereliction in this regard "aided the defense" by permitting Appellant to further contextualize his claim that he acted under Weatherill's influence and control.  Majority Opinion, *slip op.* at 27.

Respectfully, I find this reasoning to be unpersuasive.  Regardless of Weatherill's involvement, the evidence was that Appellant, by his own action, engaged in assertive criminal conduct that resulted in potential injury to an elderly woman.  From this dangerous altercation, the jury might infer that Appellant had little regard for the wellbeing of others, providing an otherwise impermissible character-based reason bolstering the Commonwealth's theory that Appellant killed Mrs. Brown.  *Cf. Commonwealth v. Billa,* 521 Pa. 168, 179–80, 555 A.2d 835, 841–42 (1989) (explaining that cautionary instructions are generally required, in connection with the admission of other-bad-acts evidence, precisely to discourage such impermissible inferences).  Significantly, moreover, Appellant had ample opportunity otherwise to explain that Weatherill was the leader and the killer.  And it is important to note that, as a self-admitted accomplice to the robberies of Mrs. Brown and the elderly woman, Appellant's testimony relative to Weatherill's involvement would likely cause circumspection on the jurors' part in all events.  *See, e.g.*, *Commonwealth v. Bubna*, 357 Pa. 51, 66, 53 A.2d 104, 112 (1947) ("It is a matter of general knowledge that partners in crime are likely when apprehended to cast the chief blame on each other.").[3]

---

[3] The *Bubna* Court went on to explain that "[i]t is also equally well known that partners in crime sometimes do tell the truth as to the commission of the crime."  *Id.*  The fact that a defendant may be telling the truth, however, does not diminish the likelihood that jurors will accord lesser weight to the testimony of one who is unable to credibly deny his involvement in a criminal episode but seeks to blame others where the proof is not ironclad.

At bottom, it seems to me that the risk that the jurors would draw negative implications from the purse-snatching incident far outweighs the "aid" the majority attributes to the evidence.  In this regard, it is noteworthy that trial counsel did not ascribe, in any fashion, to having sought to pursue such purported advantage.

Particularly given the majority's explanation that a jailhouse informant's testimony is the sole evidence implicating Appellant (as opposed to Weatherill) as the killer, Majority Opinion, slip op. at 22, I cannot agree with its conclusion that trial counsel's failure to seek the exclusion of the other-bad-acts evidence, or at least to secure a limiting instruction, was non-prejudicial.  *Accord supra* note 2.  Thus, I would award a new trial.