J-S49040-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| JASON BINGAMAN | : | |
| Appellant | : | No. 514 WDA 2020 |

Appeal from the PCRA Order Entered March 30, 2020
In the Court of Common Pleas of Jefferson County Criminal Division at
No(s): CP-33-CR-0000131-2016

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| JASON BINGAMAN | : | |
| Appellant | : | No. 515 WDA 2020 |

Appeal from the PCRA Order Entered March 30, 2020
In the Court of Common Pleas of Jefferson County Criminal Division at
No(s): CP-33-CR-0000236-2016

BEFORE: OLSON, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    FILED DECEMBER 11, 2020

Appellant Jason Bingaman appeals the order of the Court of Common Pleas of Jefferson County denying his petition pursuant to the Post-Conviction Relief Act (PCRA).[1] Appellant claims that his trial counsel was ineffective in failing to object to the trial court's failure to give a jury instruction explaining

_____

[*] Former Justice specially assigned to the Superior Court.
[1] 42 Pa.C.S.A. §§ 9541-9546.

the limited purpose for which prior bad act evidence could be considered. After careful review, we affirm.

Appellant was arrested and charged in connection with the operation of two separate methamphetamine labs in Brookville, Pennsylvania and Glen Campbell, Pennsylvania. At the conclusion of Appellant's consolidated trial, on September 26, 2013, a jury convicted Appellant of multiple drug-related offenses, including inter alia, operating a methamphetamine lab, manufacturing a controlled substance, illegal dumping of methamphetamine waste, and criminal conspiracy (manufacture/possession with intent to deliver a controlled substance).[2]

On direct appeal, this Court included the following summary of the factual background of this case:

> Kristen Cook met Appellant ... at a party on the night of Thanksgiving of 2015 that was held at the residence he shared with Melissa Nolder in Glen Campbell, PA. Methamphetamine (hereinafter "meth") was at the heart of their relationship from the start. At the party, "everybody there was smoking meth" and Cook joined in as well as taking pills. Appellant and Cook quickly formed a relationship and Appellant came to stay with her for a weekend at her residence in Brookville, PA. Later, around December 5, 2015, the day before Cook's birthday, Appellant came to Cook's residence and ended up staying until the day that his meth lab was discovered by a Brookville Police Officer on December 14, 2015.
>
> At the time that he moved in, Appellant told Cook that he did not want to be at the place in Glen Campbell. He specifically told Cook that, in addition to not trusting people there (because

_____

[2] 35 P.S. §§ 780-113.4(a)(1), 780-113(a)(3), 780-113.4(b)(1) and 18 Pa.C.S.A. § 903, respectively.

he feared they were stealing from him), he was concerned because he was making meth at this residence and he had been told that the residence was being "watched" by the police.

When Appellant moved in with Cook, he continued making meth and provided some to her for her use. Cook observed him making it at another couple's house and once at her residence prior to December 14, 2015. Cook would assist him by purchasing some of the precursors and Cook was aware that others were assisting him in the same way. In a notebook, Appellant logged people who were helping him, which included Melissa Nolder … and Jordan Pavlak.

Cook described that Appellant kept his meth making materials in a plastic tote that he normally stored in the trunk of her car. A tote containing many meth lab components was found by Officer Vince Markle of the Brookville Borough Police in the dining room of Cook's residence on December 14, 2015 when the meth lab operation was discovered. At that time, many more meth-making materials and associated items were found on a table in the same room. Melissa Nolder also confirmed that a couple of weeks prior to Appellant's contacting her for a ride (discussed below), she had seen Appellant leave Glen Campbell with a clear tote that had camp fuel, lye, measuring bowls and cups in it.

On December 14, 2015, the Jefferson County Probation Department, assisted by Officer Markle sought to execute an arrest warrant on an unrelated individual at Cook's residence. When they arrived, Markle saw what he suspected to be meth lab components. Upon calling Cook at her place of employment, it was confirmed that a meth lab was present inside the residence and an active "one-pot" meth lab (chemical reaction was occurring) was bubbling in an upstairs bedroom. The area was then evacuated and the Pennsylvania State Police clandestine lab team was activated.

The next day, Officer Markle found Appellant outside of Cook's residence. It was very cold that day and Appellant was dressed only in a tee shirt and blue jeans. He was soaking wet and shivering/shaking. It had been sleeting the night before and that morning. Markle put him in the back of his patrol car and transported him to the police station. Markle called the investigating state trooper on the case and inquired about

Appellant and was told that they were not ready to arrest Appellant at that point. He was released.

Appellant called Melissa Nolder for a ride from Brookville after he had been released by Markle. Appellant told Nolder and another that the cops had showed up in Brookville and he had to go on the run, that he had "went through the river," slept in a tree stand that night and that he had been picked up by the cops and released.

Nolder also confirmed that Appellant was cooking meth again in Glen Campbell within the week prior to Christmas. Nolder confirmed that she was assisting Appellant by buying Sudafed for him in December. Also, many people were coming to the residence to smoke and shoot meth. Appellant would give them meth for boxes of Sudafed.

Commonwealth witness Jordan Pavlak was also familiar with Appellant's making meth in Glen Campbell during this November through December 2015 timeframe. Pavlak had moved into Nolder and Appellant's residence in Glen Campbell around Thanksgiving of 2015 and was there for approximately a month. Pavlak would buy Sudafed for him starting in November and bought it for him 6-8 times after that. The meth lab was discovered because a state constable had a bench warrant for the arrest of Pavlak and she was found at Nolder's Glen Campbell residence on December 31, 2015. Pavlak was arrested and ultimately the meth lab was discovered.

Based on these facts, Appellant was charged in the case docketed at CP-33-CR-0000131-2016 with various offenses stemming from the methamphetamine-manufacturing operation (hereinafter, "meth lab") discovered on December 14, 2015, in Kristin Cook's home in Brookville Borough of Jefferson County (hereinafter, "Brookville case"). In the case docketed at CP-33-CR-0000236-2016, he was charged with crimes stemming from his operating the meth lab based in Melissa Nolder's home in Glen Campbell Borough of Indiana County ("Glen Campbell case"), which was discovered on December 31, 2015. Prior to trial, the Commonwealth moved to consolidate the Brookville and Glen Campbell cases. After conducting a hearing, the trial court granted that motion.

> Appellant's consolidated jury trial commenced in September of 2016, and at the close thereof, he was convicted of various drug-related crimes, including those set forth above. On October 19, 2016, he was sentenced to an aggregate term of 24 to 87 years' incarceration. Appellant filed a timely post-sentence motion for reconsideration of his sentence. After conducting a hearing on that motion, the court denied it on November 2, 2016. Appellant filed a notice of appeal on January 4, 2017.

Commonwealth v. Bingaman, 51 WDA 2017, 2018 WL 3849866, at *1–2 (Pa.Super. Aug. 14, 2018) (unpublished memorandum) (paragraph spacing added, citations and brackets omitted).

On direct appeal, Appellant claimed the trial court had erred in consolidating his two cases for trial, alleging that the evidence in each of his cases was inadmissible in the other prosecution. Appellant also argued that the trial court abused its discretion in allowing the Commonwealth to admit testimony concerning his prior bad acts and in failing to give a cautionary instruction to the jury regarding the admission of the prior bad act evidence.

On August 24, 2018, this Court affirmed the judgment of sentence. This Court found that consolidation of the two cases was appropriate as the charges in each of Appellant's indictments "flowed from a sequence of events that formed the history of the case." Id. at *3. This Court agreed with the Commonwealth that Appellant's "production of methamphetamine was factually, a single continuous enterprise" in which facts in both cases were "inextricably woven together into one story." Id. at *4.

In addition, this Court determined that the trial court properly exercised its discretion in denying Appellant's motion to preclude the prosecution from

admitting prior bad act evidence of his shared drug involvement with Kristen Cook, including how Cook met Appellant and allowed him to move in, observed him using and making meth, and how Cook and other individuals assisted Appellant in exchange for meth. This Court noted that Appellant failed to argue why the trial court erred in finding such testimony was admissible under the res gestae exception under Pa.R.E. 404(b) "where the evidence became a part of the history of the case and formed part of the natural development of the facts." Id. at *4. Moreover, this Court reasoned that the prejudicial impact of Cook's testimony did not outweigh its probative value in explaining the "context of her relationship with Appellant and the history of his methamphetamine-making endeavors." Id. at *6.

Lastly, this Court reasoned that Appellant waived his claim that the trial court failed to provide an adequate cautionary instruction as defense counsel did not object when the trial court failed to give a jury instruction pertaining to the proper consideration of prior bad acts.

On December 26, 2018, the Supreme Court denied Appellant's petition for allowance of appeal. Commonwealth v. Bingaman, 650 Pa. 245, 199 A.3d 862 (2018).

On September 6, 2019, Appellant filed a pro se PCRA petition,[3] in which he raised, inter alia, various claims of the ineffectiveness of his trial counsel,

_____

[3] Appellant's PCRA petition was timely filed. See 42 Pa.C.S.A. § 9545(b)(1) (providing that as a general rule, a PCRA petition "including a second or

Patrick Lavelle, Esq. The PCRA court appointed Appellant counsel (George N. Daghir, Esq.) and held an evidentiary hearing on Appellant's petition.

On March 30, 2020, the PCRA court entered an order denying Appellant's petition. On April 16, 2020, Appellant filed separate notices of appeal at each docket and subsequently complied with the PCRA court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises one issue for our review on appeal:

Was trial counsel ineffective for failing to object when the trial court failed to give a previously requested cautionary/limiting jury instruction regarding the Commonwealth's introduction at trial of [Appellant's] prior criminal conduct and/or bad acts evidence such that [Appellant] was prejudiced thereby and entitled to a new trial?

Appellant's Brief, at 3.

Our standard of review is well-established:

[o]ur review of the grant or denial of PCRA relief is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. Commonwealth v. Cox, 636 Pa. 603, 146 A.3d 221, 226 n.9 (2016). The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a de novo standard of review to the PCRA court's legal conclusions. Commonwealth v. Burton, 638 Pa. 687, 158 A.3d 618, 627 n.13 (2017).

Commonwealth v. Small, 647 Pa. 423, 440–41, 189 A.3d 961, 971 (2018).

_____

subsequent petition, shall be filed within one year of the date the judgment of sentence becomes final").

In reviewing Appellant's claim that trial counsel provided ineffective representation, we are guided by the following principles:

> [a]s originally established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, [104 S.Ct. 2052, 80 L.Ed.2d 674] (1984), and adopted by Pennsylvania appellate courts, counsel is presumed to have provided effective representation unless a PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome at trial if not for counsel's error.
>
> Commonwealth v. Wantz, 84 A.3d 324, 331 (Pa.Super. 2014) (citations omitted). "A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." Commonwealth v. Daniels, 600 Pa. 1, 963 A.2d 409, 419 (2009).

Commonwealth v. Selenski, 228 A.3d 8, 15 (Pa.Super. 2020).

In this case, Appellant claims that trial counsel was ineffective in failing to object when the trial court failed to give the jury a specific instruction regarding the permissible use of the prior bad act evidence introduced by the Commonwealth through the testimony of Kristen Cook and then discussed in the prosecutor's closing argument.

We are cognizant of the following well-established principles that are applicable to the admission of evidence of prior crimes and bad acts:

> While it is true that evidence of prior crimes and bad acts is generally inadmissible if offered for the sole purpose of demonstrating the defendant's bad character or criminal propensity, the same evidence may be admissible where relevant for another purpose. Examples of other such relevant purposes include showing the defendant's motive in committing the crime

- 8 -

on trial, the absence of mistake or accident, a common scheme or design, or to establish identity…. the evidence may also be admitted where the acts were part of a chain or sequence of events that formed the history of the case and were part of its natural development. Of course, in addition to the relevance requirement, any ruling on the admissibility of evidence is subject to the probative value/prejudicial effect balancing that attends all evidentiary rulings.

Commonwealth v. Hutchinson, 611 Pa. 280, 322, 25 A.3d 277, 300–301 (2011) (quoting Commonwealth v. Powell, 598 Pa. 224, 956 A.2d 406, 419 (2008) (internal citations omitted); Pa.R.E. 404(b)).

Our courts have held that "when evidence of a defendant's prior criminal conduct or bad acts is admitted, the defendant is entitled upon request to a jury instruction explaining the limited purpose of such evidence." Hutchinson, 611 Pa. at 329, 25 A.3d at 305 (citing Commonwealth v. Tedford, 598 Pa. 639, 960 A.2d 1, 37 (2008) and Commonwealth v. Billa, 521 Pa. 168, 555 A.2d 835, 841–42 (1989)).

While Appellant relies on the Supreme Court's decision in Billa, we find the facts of that case to be distinguishable. In Billa, the appellant had been convicted of the first-degree murder of a sixteen-year-old Hispanic female. During the trial, the prosecution was permitted to admit evidence that the appellant had committed a prior sexual assault of another young Hispanic female two months earlier, as the trial court found the crimes were similar enough in modus operandi and to show the appellant's intent, motive and absence of accident. Billa, 521 Pa. at 174-75, 555 A.2d at 838-39.

On appeal, the Supreme Court found the appellant's trial counsel was ineffective in failing to request a jury instruction to explain the limited purposes for which the evidence of the prior assault was relevant and admissible. The Supreme Court recognized that the extensive testimony of the appellant's prior rape victim, which constituted a substantial part of the prosecution's case, was highly inflammatory and "created the substantial danger that the jury could be swayed in its deliberations ... by this evidence showing [the] appellant's criminal character and his propensity to sexually assault young Hispanic females." Id. at 180, 555 A.2d at 841. As an appropriate limiting instruction might have brought the "limited legal significance [of the prior assault] in proper prospective," the Supreme Court awarded the appellant a new trial. Id. at 183, 555 A.2d at 843.

In contrast, in this case, we reject Appellant's claim that trial counsel was ineffective in failing to request a limiting instruction. The evidence of Appellant's illegal activity was not inflammatory, but directly relevant to explain how an ongoing criminal enterprise developed and ultimately unraveled upon the discovery of the two meth labs in December 2015. Nearly all the questioned evidence can be characterized as direct or circumstantial evidence of Appellant's participation in a conspiracy to operate a meth lab rather than prior bad acts or crimes.

In addition, while the trial court did not instruct the jury specifically on how to view specific instances of res gestae testimony, it emphasized that Appellant's charges for the Brookville and Glen Campbell meth labs involved

separate and distinct matters, which required the jury to consider each offense and the evidence applicable to each offense separately. Notes of Testimony (N.T.), 9/23/16, at 206-208. The trial court specifically instructed the jury that, even if they found the prosecution had proven that Appellant operated one of the meth labs, the jury still had to find the charges regarding the other lab were proven beyond a reasonable doubt and could only consider the evidence connected to each lab as proof of a "common plan, scheme, or design." Id.

Moreover, Appellant failed to prove that he was prejudiced such that there was a reasonable probability that the outcome of his trial would have been different but for counsel's failure to request the additional limiting instruction. The prosecution presented overwhelming evidence of Appellant's guilt and his direct connection to both labs, offering witness testimony that was corroborated with physical evidence.

There was compelling evidence that Appellant had been cooking meth at Kristen Cook's Brookville home when officers arrived to serve a warrant. Based on the facts presented, it is reasonable to infer that Appellant fled from the home to evade the police, exited the door without properly closing it, left his jacket and his car at Cook's home, and returned to the scene the following day, soaking wet and freezing cold as he did not have appropriate clothing for the weather. These circumstances were explained and corroborated by Appellant's admissions to others that, as he had been making meth when the

police arrived, Appellant fled the home, traveled "through a river," spent the night in a tree stand, and was picked up by the police the next day.

In addition, upon discovering the active meth lab at the Brookville home, officers discovered Appellant's meth-production notebook which documented the interworkings of his labs. The notebook contained records of numerous purchases of Sudafed made by Appellant and various individuals who testified that they supplied Appellant with this ingredient so that he could manufacture meth at both the Brookville and Glen Campbell homes.  Appellant's notebook and Steelers jacket were found next to meth-making paraphernalia.

With respect to the meth lab discovered at the Glen Campbell location, constables caught Appellant at the scene when serving an arrest warrant for Jordan Pavlak.  The testimony of several witnesses that Appellant was manufacturing meth in Glen Campbell (Cook, Nolder, and Pavlak) was corroborated by records that Appellant had arranged for others to purchase Sudafed on his behalf, but left that location as he was concerned the police were watching him there.  Witness testimony and purchasing records also showed that Appellant resumed meth production at the Glen Campbell lab after his Brookville lab was discovered on December 14 and continued until the Glen Campbell lab was busted on December 31.  Officers also recovered a Coleman Fuel can, an instrument used in the meth-making process; the can had the name "Jason" written on it.

Given the overwhelming evidence of Appellant's guilt, we agree with the PCRA court's assessment that "it is fanciful to posit that [the jury] members

would have found [Appellant] not guilty had they been given a 404(b) instruction." PCRA Court Opinion, 3/30/20, at 3. See Hutchinson, 611 Pa. at 330-31, 25 A.3d at 306 (finding that in light of the overwhelming evidence of the appellant's guilt, the appellant failed to show how he was prejudiced by his counsel's failure to request a jury instruction on the limited purpose of Rule 404(b) evidence). As such, Appellant's ineffectiveness claim fails.

Accordingly, we affirm the PCRA court's order denying his petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/11/2020