J-S56037-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| ANTHONY KAREEM HAYES, | |
| Appellee | No. 594 MDA 2015 |

Appeal from the PCRA Order March 24, 2015
in the Court of Common Pleas of York County
Criminal Division at No.: CP-67-CR-0007258-2009

BEFORE:  SHOGAN, J., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                **FILED NOVEMBER 10, 2015**

The Commonwealth of Pennsylvania appeals from the court's order granting in part the petition filed by Appellee, Anthony Kareem Hayes, pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546, and ordering a new trial.  We affirm.

This case stems from the September 26, 2009 stabbing-death of Kenneth Ramos.  A previous panel of this Court summarized the underlying facts as follows:

> [Appellee], Jamell McMillan and the decedent were together during a party at a certain home.  At some point, they left the party, apparently to obtain more beer, but then returned to the aforesaid residence.  McMillan would later testify that, when the three men returned to the home, he exited their car and walked towards the front of the house.  While he did so,

_____

[*] Retired Senior Judge assigned to the Superior Court.

[Appellee] and the decedent alighted from the vehicle and argued. According to McMillan, the decedent punched [Appellee], knocking him down. Thereafter, the two engaged in a physical fight until the decedent dropped to the ground.

[Appellee] told McMillan to come to the vehicle, and the latter did so. When McMillan entered the car, he saw that [Appellee] was holding a knife in his hand. [Appellee] then said that he had killed the decedent.

During the altercation between [Appellee] and the decedent, a witness named Tessa Hollinger was in a nearby parked car. She saw two men arguing and fighting. Eventually, she saw one of the two fall to the ground. She could not identify either person in the fight.

Two other individuals, Michael Smith and David Floyd, would eventually testify that [Appellee] told them he had stabbed the decedent.

At trial, a forensic pathologist would testify that the decedent died from a stab wound that cut his spinal cord and brainstem. The pathologist opined that the death was a homicide.

[Appellee] was arrested and charged with multiple offenses. . . .

(***Commonwealth v. Hayes***, No. 554 MDA 2012, unpublished memorandum at *1-*2 (Pa. Super. filed Dec. 5, 2012)).

On October 18, 2011, the Commonwealth filed a pre-trial motion *in limine* seeking to introduce evidence of Appellee's prior gang activity as motive for the killing. **See** Pa.R.E. 404(b)(1)-(2).[1] The trial court granted

_____

[1] Under Pennsylvania Rule of Evidence 404(b), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). However, "[t]his evidence may be
*(Footnote Continued Next Page)*

the motion and Appellee proceeded to a jury trial on December 12, 2011. The Commonwealth's theory of the case was based on an intra-gang rivalry between Appellee and the victim. (**See** N.T. Trial, 12/12/11, at 87; N.T. Trial, 12/14/11, at 392, 395, 401-02). The testimony reflected that they were members of the "Valentine" gang, a local chapter of the larger "Bloods" gang, and that the victim was the leader of the Valentines. (N.T. Trial, 12/12/11, at 211, 261; **see also id.** at 209-15, 261-63). The Commonwealth presented evidence that Appellee may have killed the victim in order to take control of the gang. (**See id.** at 139, 206, 263, 283). At the conclusion of trial, defense counsel did not request a limiting instruction regarding the gang references, and the court did not give the applicable standard jury instruction. (**See** PCRA Court Opinion, 3/24/14, at 14) (citing Pa.SSJI Crim. 3.08).[2]

*(Footnote Continued)* ────────────

admissible for another purpose, such as proving motive[.]" Pa.R.E. 404(b)(2).

[2] Instruction 3.08 states in pertinent part: "This evidence is before you for a limited purpose, that is, for the purpose of tending to [show motive]. This evidence must not be considered by you in any way other than for the purpose I just stated. You must not regard this evidence as showing that the defendant is a person of bad character or criminal tendencies from which you might be inclined to infer guilt." Pa.SSJI Crim. 3.08(2).

The jury acquitted Appellee of first-degree murder and convicted him of third-degree murder. On February 2, 2012, the trial court sentenced him to a term of not less than twenty nor more than forty years' incarceration. Appellee filed a post-sentence motion, which the trial court denied. This Court affirmed the judgment of sentence on December 5, 2012. (*See Commonwealth v. Hayes*, 64 A.3d 10 (Pa. Super. 2012)). Our Supreme Court denied Appellee's petition for allowance of appeal on June 27, 2013. (*See Commonwealth v. Hayes*, 70 A.3d 809 (Pa. 2013)).

On October 10, 2013, Appellee filed a *pro se* "Petitio L' Breve d' Habeas Corpus Ad Subjiciendum," which the PCRA court treated as a PCRA petition. The court appointed counsel, who filed amended PCRA petitions, raising several allegations of trial counsel ineffectiveness. Material to the instant appeal is the claim that counsel was ineffective for failing to request a limiting instruction regarding Appellee's gang activities. The court heard testimony on this issue on January 29, 2015. At the hearing, trial counsel testified:

> Q. Did you have any discussions with [Appellee] about any instructions on gang activity?
>
> A. I don't believe so. We talked a lot about the gang activity because that came up. [The Commonwealth] had filed, you know, to have that admitted, and we fought pretty hard against that one, but [the trial court] denied us and allowed that evidence in, and I know one of the complaints here is me not asking for an instruction on, you know, motive and gang activity, and my recollection is, you know, the standard instruction is enough, and I believe [the trial court] gave it where the standard instruction, the Commonwealth need not prove motive,

but if they do, you know, you are allowed to consider it, but I didn't request anything specific with regard to that.

Q. So in your opinion, the standard instruction as given by [the trial court] was sufficient to cover the issue?

A. Yeah, and I mean the gang activity, that was—that was a tough issue to deal with in the trial, and we don't want to keep bringing attention to it, especially what happened with the one juror and the hearts on the driveway, but, no, I did not request anything specific with regard to that.

* * *

Q. Regarding the limit[ing] instruction on the gang testimony, you did not request that to the jury, is that correct, in a charging instruction?

A. With regard to motive?

Q. With regard to there was testimony regarding gang activity and what purpose that could be used for to the jury as not to infer anything negative as to that gang activity and testimony other than the intended purpose for which it was used, and in this case, I think it was motive.

A. That's what the gang activity was solely related to was motive, and I know there is a standard instruction with regard to motive, and I'm 99 percent sure [the trial court] would have given that, so, no, I guess [the] simple answer is no, I didn't request any additional instruction specific to that issue.

Q. Specific to the gang issue?

A. Yes.

Q. And just so the record is clear specific to the gang issue, that the jury should not consider that for any other purpose other than motive, that instruction wasn't given—

A. No.

Q. —or requested by you, is that correct?

- 5 -

A.  No, because during the course, too, of jury deliberations, the gang issue was all over the place because the one juror came in sobbing the next morning.  I asked for a mistrial because she had valentines painted on her driveway, and it was just an overriding theme with regard to everything.

(N.T. PCRA Hearing, 1/29/15, at 29-30, 36-37).

On March 24, 2015, the PCRA court entered its order and supporting opinion denying Appellee's petition in part and granting it in part. Specifically, the court denied the PCRA petition as it related to all issues except trial counsel ineffectiveness for failure to request a limiting instruction regarding Appellee's gang activity.  (**See** Order, 3/24/15, at 1). The court ordered a new trial on this basis.  (**See id.**).  This timely appeal followed.[3]

The Commonwealth raises one issue for our review:

1.      Whether the PCRA court erred in granting [Appellee] a new trial where [t]rial [c]ounsel had a reasonable basis for not requesting a jury instruction regarding gang activity and where [Appellee] was not prejudiced by [counsel's] actions?

(Commonwealth's Brief, at 4).

In PCRA appeals, our scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party.  Because most PCRA appeals involve questions of fact and law, we employ a mixed standard of review.  We defer to the PCRA court's factual findings and credibility

_____

[3] Pursuant to the PCRA court's order, the Commonwealth filed a timely concise statement of errors complained of on appeal on April 10, 2015.  **See** Pa.R.A.P. 1925(b).  The PCRA court filed an opinion on April 15, 2015, in which it relied on its prior opinion entered March 24, 2015.  **See** Pa.R.A.P. 1925(a).

determinations supported by the record. In contrast, we review the PCRA court's legal conclusions *de novo.*

*Commonwealth v. Reyes-Rodriguez*, 111 A.3d 775, 779 (Pa. Super. 2015) (*en banc*) (citations and quotation marks omitted).

On appeal, the Commonwealth contends that the PCRA court erred in determining that trial counsel rendered ineffective assistance by failing to request a limiting instruction regarding Appellee's gang affiliation. (*See* Commonwealth's Brief, at 12-20). It argues that counsel's strategy was reasonably designed to advance Appellee's interest where she testified the standard jury instruction sufficiently covered the topic. (*See id.* at 16). The Commonwealth maintains that counsel's strategy was also reasonable where an instruction would have drawn additional attention to the gang evidence, which she wanted to minimize. (*See id.*). The Commonwealth further argues that Appellee was not prejudiced by counsel's failure to request an instruction. (*See id.* at 18). We disagree.

Initially, we observe that Appellee was the prevailing party at the PCRA level. "Thus, we must review the record in a light most favorable to him, not the Commonwealth." *Commonwealth v. Stewart*, 84 A.3d 701, 706 (Pa. Super. 2013), *appeal denied,* 93 A.3d 463 (Pa. 2014).

To prevail on a petition for PCRA relief, a petitioner must plead and prove, by a preponderance of the evidence, that his conviction or sentence resulted from one or more of the circumstances enumerated in 42 Pa.C.S.A. § 9543(a)(2). These circumstances include ineffectiveness of counsel, which

"so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." *Commonwealth v. Walker*, 110 A.3d 1000, 1003 (Pa. Super. 2015) (citation omitted).

> To be eligible for relief based on a claim of ineffective assistance of counsel, a PCRA petitioner must demonstrate, by a preponderance of the evidence, that (1) the underlying claim is of arguable merit; (2) no reasonable basis existed for counsel's action or omission; and (3) there is a reasonable probability that the result of the proceeding would have been different absent such error. . . .

*Commonwealth v. Matias*, 63 A.3d 807, 810 (Pa. Super. 2013), *appeal denied*, 74 A.3d 1030 (Pa. 2013) (citation omitted).

> A claim has arguable merit where the factual averments, if accurate, could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination.
>
> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.
>
> Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Stewart*, *supra* at 707 (citations and quotation marks omitted).

"Evidence of a defendant's prior criminal activity is inadmissible to demonstrate his bad character or criminal propensity. The same evidence may be admissible for various legitimate purposes, however, provided that . . . **an appropriate limiting instruction is given**." *Commonwealth v. Collins*, 70 A.3d 1245, 1252 (Pa. Super. 2013), *appeal denied*, 80 A.3d 774 (Pa. 2013) (citation omitted; emphasis adddd).

> Evidence of a defendant's prior bad acts is generally inadmissible, and where such evidence is admitted, a defendant is **entitled** to a jury instruction that the evidence is admissible only for a limited purpose. Where evidence of a defendant's prior bad acts is merely a fleeting or vague reference, however, trial counsel might reasonably decline to object or request a limiting instruction to avoid drawing attention to a reference that might have gone relatively unnoticed by the jury.

*Commonwealth v. Hutchinson*, 811 A.2d 556, 561-62 (Pa. 2002), *cert. denied*, 540 U.S. 858 (2003) (citations omitted; emphasis added).

Instructive to the issue before us is our Supreme Court's decision in *Commonwealth v. Billa*, 555 A.2d 835 (Pa. 1989). In *Billa*, the Commonwealth introduced evidence of the circumstances of a prior offense committed by the defendant to show his intent and motive in murdering the victim. *See id.* at 838-39. The trial court failed to give a jury instruction explaining the limited purpose for which the evidence was relevant and admissible, and trial counsel did not request that the court give such instruction. *See id.* at 841-42. Our Supreme Court determined that trial counsel was constitutionally ineffective in failing to request an appropriate limiting instruction and that a new trial was necessary. *See id.* at 843.

Turning to the instant case, it is apparent that Appellee's underlying claim has arguable merit, where our case law establishes that he was entitled to a limiting instruction on the prior bad acts evidence. **See Hutchinson**, **supra** at 561-62; **Collins**, **supra** at 1252; **Billa**, **supra** at 842.

Further, a review of PCRA proceedings shows that trial counsel lacked a reasonable basis for failing to request a limiting instruction. First, counsel explained that she did not request a specific instruction because she believed the trial court's standard instruction adequately addressed the issue of the gang evidence. (**See** N.T. PCRA Hearing, 1/29/15, at 29-30, 36-37). However, as discussed above, the record reflects that the court **did not give** the standard Rule 404(b) instruction. (**See** N.T. Trial, 12/14/11, at 403-427; PCRA Ct. Op., at 10, 14).

Second, counsel testified that she did not request a limiting instruction because she did not want to draw the jury's attention to the gang issue. (**See** N.T. PCRA Hearing, 1/29/15, at 30, 37). However, as the Commonwealth acknowledges, defense counsel herself brought the gang issue to the jury's attention during closing argument. (**See** Commonwealth's Brief, at 15-16). In fact, her first comments to the jury during closing were on this topic. (**See** N.T. Trial, 12/14/11, at 378-39). Further, while we recognize that counsel might reasonably decline to request a limiting instruction to avoid drawing attention to a fleeting or vague reference that might have gone unnoticed by the jury, **see Hutchinson, supra** at 561-62,

the gang references in the instant case cannot be characterized as fleeting or vague. By counsel's own description, "the gang issue was all over the place" and "an overriding theme with regard to everything." (N.T. PCRA Hearing, 1/29/15, at 37). The PCRA court noted ninety-one gang references in the trial notes of testimony, and the jurors were questioned about their feelings regarding gang membership during *voir dire*. (**See** Trial Ct. Op., at 13; N.T. Trial, 12/12/11, at 33-34). Thus, the jury's attention had already been focused on the gang issue, and counsel's failure to request an instruction limiting its consideration of this damaging evidence lacked a reasonable basis. **See Billa**, **supra** at 843.

Finally, Appellee was prejudiced by counsel's error where the gang evidence was admissible only for the limited purpose of establishing motive, and the court did not caution the jury against regarding it as showing Appellee is a person of bad character or that he has criminal tendencies. Given the extensive nature of the references, the omission of a limiting instruction is sufficient to undermine confidence in the trial's outcome. **See Stewart**, **supra** at 707; **Billa**, **supra** at 842-43.

In sum, upon review, we discern no error in the PCRA court's determination that counsel was ineffective for failing to request a limiting instruction regarding the gang evidence. **See Reyes-Rodriguez**, **supra** at 779. Accordingly, we affirm the order of the PCRA court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/10/2015