J-S30002-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JASON BINGAMAN, | |
| Appellant | No. 51 WDA 2017 |

Appeal from the Judgment of Sentence Entered October 19, 2016
In the Court of Common Pleas of Jefferson County
Criminal Division at No(s):
CP-33-CR-0000131-2016
CP-33-CR-0000236-2016

BEFORE: BENDER, P.J.E., STABILE, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:            **FILED AUGUST 14, 2018**

Appellant, Jason Bingaman, appeals from the judgment of sentence of an aggregate term of 24 to 87 years' incarceration, imposed after he was convicted, in two separate cases, of various drug-related offenses, including operating a methamphetamine lab, 35 P.S. § 780-113.4(a)(1), possession with intent to deliver a controlled substance, 35 P.S. § 780-113(a)(3), and illegal dumping of methamphetamine waste, 35 P.S. § 780-113.4(b)(1). After careful review, we affirm.

The facts of Appellant's case were summarized by the Commonwealth, as follows:

_____

[*] Retired Senior Judge assigned to the Superior Court.

Kristen Cook met Appellant … at a party on the night of Thanksgiving of 2015 that was held at the residence he shared with Melissa Nolder in Glen Campbell, PA. Methamphetamine (hereinafter "meth") was at the heart of their relationship from the start. At the party, "everybody there was smoking meth" and Cook joined in as well as taking pills. [Appellant] and Cook quickly formed a relationship and [Appellant] came to stay with her for a weekend at her residence in Brookville, PA. Later, around December 5, 2015, the day before Cook's birthday, [Appellant] came to Cook's residence and ended up staying until the day that his meth lab was discovered by a Brookville Police Officer on December 14, 2015. At the time that he moved in, [Appellant] told Cook that he did not want to be at the place in Glen Campbell. He specifically told Cook that, in addition to not trusting people there ([because he feared they were] stealing from him), he was concerned because he was making meth at this residence and he had been told that the residence was being "watched" by the police. When [Appellant] moved in with Cook, he continued making meth and provided some to her for her use. Cook observed him making it at another couple's house and once at her residence prior to December 14[, 2015]. Cook would assist him by purchasing some of the precursors and Cook was aware that others were assisting him in the same way. In a notebook, [Appellant] logged people who were helping him[,] which included Melissa Nolder … and Jordan Pavlak. Cook described that [Appellant] kept his meth making materials in a plastic tote that he normally stored in the trunk of her car. N.T. 9/22/2016, p. 4-27. A tote containing many meth lab components was found by Officer Vince Markle of the Brookville Borough Police in the dining room of Cook's residence on December 14, 2015 when the meth lab operation was discovered. At that time, many more meth-making materials and associated items were found on a table in the same room. *Id.* at 51, 73-82. Melissa Nolder also confirmed that a couple [of] weeks prior to [Appellant's] contacting her for a ride (discussed below), she had seen [Appellant] leave Glen Campbell with a clear tote that had camp fuel, lye, measuring bowls and cups in it. **Id.** at 142.

On December 14, 2015, the Jefferson County Probation Department, assisted by Officer Markle sought to execute an arrest warrant on an unrelated individual at Cook's residence. When they arrived, Markle saw what he suspected to be meth lab components. Upon calling Cook at her place of employment, it was confirmed that a meth lab was present inside the residence

- 2 -

and an active "one-pot" meth lab (chemical reaction was occurring) was bubbling in an upstairs bedroom. The area was then evacuated and the Pennsylvania State Police clandestine lab team was activated. The next day, Officer Markle found [Appellant] outside of Cook's residence. It was very cold that day and [Appellant] was dressed only in a tee shirt and blue jeans. He was soaking wet and shivering/shaking. It had been sleeting the night before and that morning. Markle put him in the back of his patrol car and transported him to the police station. Markle called the investigating state trooper on the case and inquired about [Appellant] and was told that they were not ready to arrest [Appellant] at that point. He was released. N.T. 9/22/2016, p. 43-58. [Appellant] called Melissa Nolder for a ride from Brookville after he had been released by Markle. [Appellant] told Nolder and another that the cops had showed up in Brookville and he had to go on the run, that he had "went through the river," slept in a tree stand that night and that he had been picked up by the cops and released. *Id.* at 140-142, 163.

Nolder also confirmed that [Appellant] was cooking meth again in Glen Campbell within the week prior to Christmas. Nolder confirmed that she was assisting [Appellant] by buying Sudafed for him in December. Also, many people were coming to the residence to smoke and shoot meth. [Appellant] would give them meth for boxes of Sudafed. *Id.* at 139-143. Commonwealth witness Jordan Pavlak was also familiar with [Appellant's] making meth in Glen Campbell during this November through December 2015 timeframe. Pavlak had moved into Nolder and [Appellant's] residence in Glen Campbell around Thanksgiving of 2015 and was there for approximately a month. Pavlak would buy Sudafed for him starting in November and bought it for him 6-8 times after that. The meth lab was discovered because a state constable had a bench warrant for the arrest of Pavlak and she was found at Nolder's Glen Campbell residence on December 31, 2015. Pavlak was arrested and ultimately the meth lab was discovered. *Id.* at 156-164; N.T. 9/23/2016, p. 3-11, 17-21.

Commonwealth's Brief at 1-4 (footnote omitted).

Based on these facts, Appellant was charged in the case docketed at CP-33-CR-0000131-2016 with various offenses stemming from the methamphetamine-manufacturing operation (hereinafter, "meth lab")

discovered on December 14, 2015, in Kristin Cook's home in Brookville Borough of Jefferson County (hereinafter, "Brookville case"). In the case docketed at CP-33-CR-0000236-2016, he was charged with crimes stemming from his operating the meth lab based in Melissa Nolder's home in Glen Campbell Borough of Indiana County ("Glen Campbell case"), which was discovered on December 31, 2015. Prior to trial, the Commonwealth moved to consolidate the Brookville and Glen Campbell cases. After conducting a hearing, the trial court granted that motion.

Appellant's consolidated jury trial commenced in September of 2016, and at the close thereof, he was convicted of various drug-related crimes, including those set forth above. On October 19, 2016, he was sentenced to an aggregate term of 24 to 87 years' incarceration. Appellant filed a timely post-sentence motion for reconsideration of his sentence. After conducting a hearing on that motion, the court denied it on November 2, 2016. Appellant filed a notice of appeal on January 4, 2017. On May 9, 2017, the trial court ordered him to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal by June 30, 2017, and Appellant timely complied. The court filed a Rule 1925(a) opinion on July 13, 2017.

Herein, Appellant presents three issues for our review:

[I.] Whether the trial court erred by granting the Commonwealth['s] Motion for Consolidation and Joinder of Informations when the testimony presented at the August 18, 2016 hearing was insufficient to support the conclusion that the evidence of each incident would be admissible in a separate trial for the other, for reasons including that the evidence presented supported a finding of a common scheme, plan or design[?]

- 4 -

[II.] Whether [the c]ourt erred by denying [Appellant's] Motion *in Limine* to prevent the Commonwealth from offering testimony of prior bad acts alleged to have been committed by Appellant[?]

[III.] Whether the [c]ourt erred by failing to give a cautionary instruction to the jury concerning the admission of prior bad acts testimony[?]

Appellant's Brief at 4.

Before addressing Appellant's issues, we must determine whether his appeal is timely. As stated *supra*, the trial court denied Appellant's post-sentence motion on November 2, 2016, yet his notice of appeal was not filed until January 4, 2017. **See** Pa.R.Crim.P. 720(A)(2)(a) (stating that if the defendant files a timely post-sentence motion, the notice of appeal must be filed within 30 days of the entry of the order deciding that motion). We recognize that, "[g]enerally, an appellate court cannot extend the time for filing an appeal." **Commonwealth v. Patterson**, 940 A.2d 493, 498 (Pa. Super. 2007) (citations omitted). However, "a court can grant relief in cases of fraud or a breakdown in the operations of the courts." **Id.**

Here, we conclude that a breakdown in the trial court's operations occurred, such that we may overlook the untimeliness of Appellant's appeal. Specifically, the trial court did not notify Appellant, in the written order denying his post-sentence motion, of his right to file a notice of appeal and the time within which he was required to do so.[1] **See** Pa.R.Crim.P. 720(B)(4)(a) (stating "[a]n order denying a post-sentence motion … shall

---

[1] We also point out that the court did not notify Appellant of his appellate rights at the hearing on his post-sentence motion.

include notice to the defendant of … the right to appeal and the time limits within which the appeal must be filed"). In ***Patterson***, this Court considered a trial court's failure to comply with Rule 720(B)(4)(a)'s notice requirement as "a breakdown that excuses the untimely filing of [a] notice of appeal." ***Patterson***, 940 A.2d at 499. We also noted that the trial court's "partial compliance" of informing Patterson of his appellate rights at the sentencing hearing was not sufficient to disregard "the mandatory nature of the notification" required by Rule 720(B)(4)(a). Following ***Patterson***, we will overlook the untimeliness of Appellant's notice of appeal in this case.

In Appellant's first issue, he contends that the trial court abused its discretion by granting the Commonwealth's motion to consolidate the Brookville and Glen Campbell cases for trial. Appellant complains that each of his cases constituted 'prior bad acts' evidence that would have been inadmissible in the trial for the other, had they been tried separately. He avers that he was prejudiced by the consolidation of his cases because "the jury was convinced of his guilt by sheer volume, removing from each case the possibility of reasonable doubt." Appellant's Brief at 17.

We disagree. Initially, "[w]hether or not separate indictments should be consolidated for trial is within the sole discretion of the trial court and such discretion will be reversed only for a manifest abuse of discretion or prejudice and clear injustice to the defendant." ***Commonwealth v. Newman***, 598 A.2d 275 (Pa. 1991) (citing ***Commonwealth v. Lark***, 543 A.2d 491 (Pa.

1988)).  Pennsylvania Rule of Criminal Procedure 582 governs the joinder of cases for trial, stating, in pertinent part:

> (1) Offenses charged in separate indictments or informations may be tried together if:
>
>> (a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or
>>
>> (b) the offenses charged are based on the same act or transaction.

Pa.R.Crim.P. 582(1)(a).

Appellant only challenges the trial court's determination that the evidence of each case would be admissible in a separate trial for the other. This Court has stated that, "[c]oncerning the admissibility requirement, 'evidence of other crimes may be introduced where such evidence was part of the chain or sequence of events which became part of the history of the case in question and formed part of the natural development of the facts.'" *Commonwealth v. Torres*, 177 A.3d 263, 277 (Pa. Super. 2017) (quoting *Commonwealth v. Kunkle*, 79 A.3d 1173, 1191 (Pa. Super. 2013) (citation omitted)).

In the case *sub judice*, we agree with the Commonwealth that the charges in each of Appellant's two indictments flowed from a sequence of events that formed the history of the case, making the joinder of the Brookville and Glen Campbell actions appropriate.  As the Commonwealth explains:

> The testimony at trial makes two conclusions abundantly clear. First, [Appellant] was constantly, throughout the entire month of December of 2015, engaged in the production of

methamphetamine. His production of methamphetamine was factually a single, continuous enterprise. Secondly, the stories of [Appellant's] Glen Campbell meth lab and his Brookville one are inextricably woven together into one story. Witnesses involved in his Glen Campbell meth enterprise had knowledge of and testified about his Brookville operation. Conversely, Cook knew about and testified to his Glen Campbell operation prior to hi[s] moving in with her temporarily. Cook knew about the people who were involved with him in Glen Campbell. He used the same tote to carry his meth making materials around with him in Glen Campbell and in Brookville. Nolder saw him take the tote with meth lab materials in it when he left for Brookville. Cook saw him in … possession of it in Brookville. It was found by police in the dining room of Cook's residence when his Brookville lab was busted[,] and meth making materials were found inside and on the nearby dining room table. His resumption of cooking meth in Glen Campbell came about as a result of hi[s] being busted in Brookville and coming back to Glen Campbell…. And he resumed immediately, it would appear. Thus[,] the reason for [Appellant's] movements back and forth between Glen Campbell and Brookville were entirely related to his meth operation: [Appellant] was cooking meth in Glen Campbell and then moved in with Cook in Brookville because he feared the police were on to him in Glen Campbell. Then, he moved back to Glen Campbell and resumed cooking meth there when his operation was busted in Brookville. The above truly constitutes one continuous story that needed to be told in one trial. It would have been absurd to try these two cases in separate trials when it was all one continuous story.

Commonwealth's Brief at 8-9. The Commonwealth's argument, and our review of the record, convinces us that the trial court did not abuse its discretion in consolidating Appellant's two cases for trial.[2]

---

[2] To the extent that the trial court granted the joinder of Appellant's cases on a slightly different basis, we note that this Court is permitted to affirm the trial court "on any valid basis, as long as the court came to the correct result…." *Wilson v. Transport Ins. Co.*, 889 A.2d 563, 577 n.4 (Pa. Super. 2005) (citations omitted).

Next, Appellant avers that the trial court erred by denying his pretrial motion to exclude the prior bad acts evidence of his "shared drug involvement with Kristin [*sic*] Cook…." Motion *In Limine*, 9/21/16, at 3 (unnumbered).

> The standard of review employed when faced with a challenge to the trial court's decision as to whether or not to admit evidence is well settled. Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the trial court's decision absent a clear abuse of discretion. ***Commonwealth v. Hunzer***, 868 A.2d 498 (Pa. Super. 2005). Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will. ***Id.***

***Commonwealth v. Young***, 989 A.2d 920, 924 (Pa. Super. 2010) (citation omitted). Additionally, we recognize that,

> [g]enerally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. Pa.R.E. 404(b)(1). However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. Pa.R.E. 404(b)(2). In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact. ***Commonwealth v. Powell***, 598 Pa. 224, 956 A.2d 406, 419 (2008).

***Commonwealth v. Sherwood***, 982 A.2d 483, 497 (Pa. 2009).

At the hearing on Appellant's motion to exclude Cook's prior bad acts testimony, the Commonwealth explained what her testimony would entail, as follows:

> [The Commonwealth:] She met him Thanksgiving of 2013, the night they met, they were making meth and smoking it with him.

- 9 -

He told her … he thought people were after him in Glen Campbell, then he went back after this incident and made more meth, so there's -- she's going to talk about his statements to her about who helped him, who would buy Sudafed for him, things of that nature.

N.T. Hearing, 9/22/16, at 4. The trial court ruled that Cook's proposed testimony was admissible, reasoning that it was necessary to explain Appellant's relationship with Cook, and to show how Appellant came to be making meth in her home. *Id.* at 5. In other words, the trial court essentially deemed Cook's testimony admissible under the *res gestae* exception to Rule 404(b)'s prior-bad-acts exclusion. Our Supreme Court has explained that this exception applies "where the evidence became part of the history of the case and formed part of the natural development of the facts." *Commonwealth v. Cousar*, 154 A.3d 287, 304 (Pa. 2017).

Now, on appeal, Appellant does not expressly discuss why the trial court erred by deeming Cook's testimony admissible under the *res gestae* exception. Instead, he contends that Cook's "testimony far exceeded that proposed by the Commonwealth or considered by the court." Appellant's Brief at 18. Appellant then cites to various remarks by Cook that, according to him, surpassed the pretrial ruling to admit her testimony. *Id.* at 18-19. However, our review of those portions of Cook's testimony reveals that Appellant at no point objected to those statements by Cook. Accordingly, he has waived his argument that the court should have precluded Cook's testimony as being beyond the scope of its pretrial ruling to admit prior bad acts evidence. *See*

- 10 -

Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

The remainder of Appellant's argument focuses on whether Cook's testimony was more prejudicial than probative. **See** Appellant's Brief at 19-22. Relying on the factors set forth by this Court in **Commonwealth v. Page**, 965 A.2d 1212 (Pa. Super. 2009), Appellant maintains that Cook's prejudicial testimony should have been excluded. In **Page**, we explained:

> Evidence, even if relevant, may be excluded if its probative value is outweighed by the potential prejudice. Pa.R.E. 404(b)(3).
>
> The probative value of the evidence might be outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, pointlessness of presentation, or unnecessary presentation of cumulative evidence. Pa.R.E. 403. The comment to Pa.R.E. 403 instructs that: "'Unfair prejudice' means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Pa.R.E. 403 cmt. Additionally, when weighing the potential for prejudice, a trial court may consider how a cautionary jury instruction might ameliorate the prejudicial effect of the proffered evidence. Pa.R.E. 404(b) cmt.
>
> [**Commonwealth v.**] **Dillon**, 925 A.2d [131,] 141 [(Pa. 2007)]. However, "[e]vidence will not be prohibited merely because it is harmful to the defendant." **Id.** "[E]xclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case." **Commonwealth v. Owens**, 929 A.2d 1187, 1191 (Pa. Super. 2007), **citing Commonwealth v. Broaster**, 863 A.2d 588, 592 (Pa. Super. 2004).
>
> When evaluating whether evidence of prior acts is so prejudicial that it should be excluded, we must consider the following as set forth in **Dillon**, 925 A.2d at 141:
>
> Evidence will not be prohibited merely because it is harmful to the defendant. This court has stated that it is not

- 11 -

"required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged." *Lark*, 543 A.2d at 501. Moreover, we have upheld the admission of other crimes evidence, when relevant, even where the details of the other crime were extremely grotesque and highly prejudicial. *See Commonwealth v. Billa*, 521 Pa. 168, 555 A.2d 835, 841 (1989) (upholding the trial court's admission of evidence that the defendant had committed a prior rape, including testimony from the prior rape victim); *see also Commonwealth v. Gordon*, 543 Pa. 513, 673 A.2d 866, 870 (1996) (allowing evidence of defendant's previous sexual assaults).

McCormick, Evidence, § 190 (6th ed. 2006), sets forth factors to be considered in performing the probative value-prejudice balancing test as follows:

[M]ost authority recognizes that the problem is not merely one of pigeonholing, but of classifying and the[n] balancing. In deciding whether the danger of unfair prejudice and the like substantially outweighs the incremental probative value, a variety of matters must be considered, including the strength of the evidence as to the commission of the other crime, the similarities between the crimes, the interval of time that has elapsed between the crimes, the need for the evidence, the efficacy of alternative proof, and the degree to which the evidence probably will rouse the jury to overmastering hostility.

*See* Packel & Poulin, Pennsylvania Evidence, 3rd ed. § 404–9 p. 237.

*Page*, 965 A.2d at 1220-21.

Contrary to Appellant's argument on appeal, we conclude that the prejudicial impact of Cook's testimony did not outweigh its probative value. Essentially, Cook was permitted to testify that, in the few weeks that she knew Appellant, she observed him using and making methamphetamine, that people assisted him in these endeavors, and that Appellant provided her and

other individuals with illegal drugs, namely methamphetamine. *See* N.T. Trial at 8-25. Cook's testimony was based on her own personal observations, and each of the prior bad acts she discussed happened during a short, several-week span from around November 26 (Thanksgiving) to December 14, 2015. Her testimony was relevant and probative in explaining the context of her relationship with Appellant and the history of his methamphetamine-making endeavors, which culminated in his being caught making methamphetamine at her residence on December 14, 2015, after which he then returned to Glen Campbell and was discovered making meth there on December 31, 2015. Cook's testimony regarding Appellant's prior drug activity was not sufficient "to rouse a jury to overmastering hostility." *Id.* at 1221 (citation omitted). Therefore, we find no abuse of discretion by the trial court in admitting it.

In Appellant's third issue, he asserts that the trial court erred by not providing a cautionary instruction regarding Cook's prior-bad-acts testimony. However, our review of the record reveals that Appellant did not lodge an objection to this omission by the court. In attempting to avoid waiver, Appellant points out that, before the jury charge, defense counsel asked the court if it was "going to give the limiting instruction with regard to the prior bad acts[.]" *See* Appellant's Brief at 22 (quoting N.T. Trial, 9/23/16, at 125). However, the court seemed confused about what charge defense counsel was requesting, as evidenced by its response: "Yeah. Yeah, they have to consider each case separately, and it's only for common scheme, plan[, or] design." *Id.* at 125. Defense counsel made no attempt to correct the court or clarify

that he sought a jury instruction pertaining to Cook's testimony. He also lodged no objection at the end of the jury charge after realizing that no such instruction had been provided. Consequently, Appellant cannot now complain about the court's omission of that jury charge. *See* Pa.R.A.P. 302(a); *see also* Pa.R.Crim.P. 647 (providing that "[n]o portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate"); *Commonwealth v. Forbes*, 867 A.2d 1268, 1274 (Pa. Super. 2005) (stating that a "specific and timely objection must be made to preserve [a] challenge to [a] particular jury instruction[, and the] failure to do so results in waiver") (citation omitted).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/14/2018

- 14 -